OPINION OF THE COURT
Frederic T. Henry, Jr., J.
Defendant-appellant, William King, was charged in Canandaigua City Court with the offense of menacing in violation of Penal Law § 120.15. He was arraigned on August 2, 1983 and entered a not guilty plea. On March 30,1984 a nonjury trial was held before Canandaigua City Court Judge, Honorable Stephen D. Aronson and at the conclusion of the trial Judge Aronson found the defendant guilty of attempted menacing. On May 18, 1984 defendant’s motion to set aside the verdict was denied, but Judge Aronson rescinded his verdict of attempted menacing, replacing it with a guilty verdict of menacing.
The defendant appeals on the bases that the verdict relied on an impermissible in-court identification; that the substitution of a conviction of menacing for an admittedly improper verdict of attempted menacing constituted error and subjection of the defendant to double jeopardy; that there was insufficient evidence on which to convict the defendant; and that the sentence ultimately imposed was excessive.
The victim, in this case, was shown an array of six photographs by police investigators. All of the photos, other than the *777 defendant’s, were in black and white. Only the defendant’s photo consisted of a composite of four photos set on an American flag background whereas the other photos consisted of a single face shot. At a pretrial suppression hearing the court granted defendant’s motion to suppress the out-of-court identification but denied suppression of that made in court. Concededly the pretrial photographic identification was improper and properly suppressed. Further, there is no argument with respect to the law established by United States v Wade (388 US 218) and following cases that requires suppression of in-court identification if based on improper pretrial identification procedure and not on an independent source. The essence of the argument here is the existence of that independent basis for the witness’s in-court identification. In the trial transcript at page 5 the victim Debra Tripodi testified that a man was walking on the same side of the street toward her and that he was weaving from side to side on the sidewalk. She also indicated on page 6 that she had an opportunity to observe him as he approached her. On cross-examination on page 19 the witness testified that “I got a good look when he was walking down the street. He was looking right at me.” There is therefore ample basis for the witness’s in-court identification apart from the suppressed photographic identification.
It is conceded by both counsel that the original verdict of guilty of attempted menacing is improper. “Attempt” is clearly an element of the crime of menacing as defined in Penal Law § 120.15 and therefore attempted menacing cannot be a lesser included offense of menacing. On May 18, 1984 the verdict of guilty of attempted menacing was replaced with a verdict of guilty of menacing. Defendant claims that such substitution of a legally cognizable charge for one which as a matter of law could not be found is improper and subjects the defendant to double jeopardy. CPL 310.50 (2) provides with respect to jury trials that: “If the jury renders a verdict which in form is not in accordance with the court’s instructions or which is otherwise legally defective, the court * * * must direct the jury to reconsider such verdict, to resume its deliberation for such purpose, and to render a proper verdict.” (Emphasis added.) Further, if the jury should persist in the erroneous or defective verdict, the court may discharge the jury and authorize the People to retry the indictment on all counts except those with respect to which the jury indicated an intention to find the defendant not guilty.
In People v Salemmo (38 NY2d 357) the Court of Appeals held that the statutory prohibition from resubmitting to a jury a count on which it is clear the jury intended to find the defendant *778 not guilty did not preclude the jury’s reconsideration of an improper verdict (here, rendered not in accordance with the court’s instructions), and the reconsideration of such verdict did not place the defendant twice in jeopardy. The resubmission of a jury’s contradictory verdict for further consideration “was not intended, nor did it, in fact, prejudice the defendant, but was only intended to implement a legitimate State policy of accepting and recording proper verdicts rendered in compliance with the law of the case” (supra, p 362). The court further stated (p 362) that “double jeopardy did not attach where the same jury reconsiders its defective or inconsistent verdict. Rather than constituting new and second jeopardy, the reconsideration of a defective or inconsistent verdict was part of the process by which the defendant’s first jeopardy was resolved.”
CPL 320.20 (4) provides that provisions governing motion practice and general procedure with respect to jury trials are, whenever appropriate, applicable to nonjury trials. The same public policy behind resubmission to juries of verdicts which are defective as a matter of law lies behind the modification of an improper verdict in a nonjury trial. Judge Aronson did not subject the defendant to double jeopardy, but simply prevented the entry and recording of an improper verdict, and reached an alternate verdict which was cognizable, appropriate and proven sufficiently by evidence at trial.
CPL 290.10 provides that a trial order of dismissal may be granted at the close of the People’s case or at the conclusion of all the evidence upon the ground that the trial evidence is not legally sufficient to establish the offense charged or any lesser included offense. Defendant points to alibi testimony and counsel’s allegation that the victim was motivated to falsify her testimony based on the fact that her brother had seriously beaten the defendant and then left him. He also points to the fact that it was defendant himself who originally called the police to report the beating to justify the argument that the prosecution had not submitted sufficient evidence. CPL 70.10 (1) defines legally sufficient evidence as “competent evidence which, if accepted as true, would establish every element of an offense charged and defendant’s commission thereof”. When viewed in conjunction with CPL 70.20 it is necessary that the prosecution prove every necessary element of the offense; establish that defendant was the one who in fact committed that offense; and finally prove every element beyond a reasonable doubt.
Admittedly there was contradictory testimony, however the court as trier of the facts chose to believe the testimony of the *779 People’s witnesses and to reject the testimony of the defendant. A review of the trial transcript indicates there is competent evidence which supports the Trial Judge’s determination and on the record presented it cannot be said the verdict is against the weight of credible evidence.
The defendant was sentenced to 60 days in the Ontario County Jail. A class B misdemeanor carries a maximum sentence of 90 days. The defendant’s criminal record, as indicated by a DCJS print-out, indicates that the defendant has a prior criminal record consisting of two incidents in 1973, both involving abduction of women and subsequent attempted rape. The latter charge involved a weapon. On December 19, 1973 defendant pleaded guilty to two counts of attempted rape in the first degree. On January 1, 1974 he received a sentence of 4 to 15 years. He was subsequently paroled on March 13, 1978.
Considering this record and the fact that the instant charge involves defendant’s accosting a woman with what the victim believed to be a weapon, the sentence of 60 days in the Ontario County Jail cannot be ruled to be excessive.
Accordingly, the judgment appealed from is in all respects affirmed.